is the case of people in the state of Illinois v. Otis Stewart and we have Mr. Dan Huffers for the appellate and Mr. Kevin Sweeney for the athlete and you may proceed Mr. Huffers. Good noon. I'm not sure actually whether it's morning or afternoon now. Just a minute before. This is the case of people v. Otis Stewart. He was convicted of home invasion and aggravated discharge of a firearm. Had a jury trial. At that jury trial the jury found him not guilty of aggravated battery with a firearm. There was direct appeal by Mr. Stewart and this court affirmed. Then on March 22, 2004, he filed a petition for post-conviction relief. That petition was eventually denied after an evidentiary hearing on June 10, 2010. That was a really long time. That will help explain why this is coming before this court so long afterwards. But there is almost six years for a decision by the circuit court. We are raising the issue of benefective assistance of appellate counsel and the direct appeal for failing to raise a Sixth Amendment claim. A hearsay claim that evidence was improperly admitted in violation of Mr. Stewart's Sixth Amendment right to confront the witnesses against him. That there not be hearsay from co-defendants to be introduced against him. The state in its brief concedes that there was a Sixth Amendment violation that occurred in this trial. They argue, the state argues, that it was harmless, that there was no prejudice to Mr. Stewart by the introduction of this evidence. And what was the evidence? One of the police officers who arrested Mr. Stewart was allowed to testify on cross-examination by the state to hearsay from another officer's police report. Officer Simmons was allowed to testify to Officer Golight's police report. Simmons testified that one of the co-defendants, and the co-defendants were Long and McCready, that one of the co-defendants informed Golight that Mr. Stewart, quote, received word that Patrick Thomas, an individual who was an alleged victim of the aggravated battering that Mr. Stewart was found not guilty of, but Mr. Stewart received word that Patrick Thomas was holding $10,000 in the glove compartment of his vehicle, and Mr. Stewart suggested that the three of them do a lick, do a rip on Mr. Thomas, unquote. So here we have the co-defendant's statement saying, Mr. Stewart was in from the very beginning and going to this place, going to the residence of the alleged victim, Robert Mike, with the intention of committing robbery. Now, the evidence was that these three individuals came to the residence that something occurred within the residence. Robert Mike, one of the alleged victims, testified that the defendant and Thomas, Mr. Stewart and Thomas came in, and Mr. Stewart attempted to rob him. Mr. Robert Mike also testified that my client, Mr. Stewart, shot Thomas, but he's found not guilty of that. Mike also is charged with unlawful possession of a handgun because he's a convicted felon, and his credibility is kind of suspect. And so all that is occurring in the home invasion, which we're focusing upon, is what was the intent of Mr. Stewart when he entered the residence of Robert Mike. And Mr. Stewart's statement to the police was that he went to the residence with the intent of only going to a party. He was told by Preeti and Long, the co-defendants, that there was going to be an after-set party in which they would be invited in, and there would be some alcohol, and there might be some girls. We don't know. The after-set life in Alton is very much different than what you and I might believe is the standard etiquette for people, but they show up at Robert Mike's house residence sometime after 3 o'clock in the morning. But he says he went there with the intent of only going to a party, and that it was only while he was inside the residence that he learned that his co-defendants had some other kind of plan. And it's very important to recognize that it is what happened at the time of the entry, and what his intent was. The jury was instructed with IPI criminal number 11.53A about the limited authority doctrine, because he was invited in. Mike even said that he let Mr. Stewart in to the residence and was speaking to him. And the limited authority doctrine provides that the defendant's entry into a dwelling of another is without authority. If at the time of entry into the dwelling, the defendant has an intent to commit a criminal act within the dwelling, regardless of whether the defendant was initially invited into or received consent to enter the dwelling. And it goes further and says that the defendant's entry into the dwelling is with authority. The defendant enters the dwelling without criminal intent and was initially invited into or received consent to enter the dwelling, regardless of what the defendant does after he enters. And that is how the jury was instructed. This is based upon the standard law provided by the Illinois Supreme Court in People v. Bush. And I have not cited that in my brief, but it's found at 157 Illinois 2nd, 248. And that the determination of whether the entry is authorized depends upon whether the defendant possessed the intent to perform a criminal act there and at the time of entry was granted. And so Mr. Stewart's statement is that he simply went there and entered the residence with the intent of being there for a party after the bars had closed and all. Then he goes on and relates, it was only then that he learned that his co-defendants were planning on a robbery. His statement says that one of them pulled out a gun and there was a robbery going to take place. Now the state points in its brief to that statement and says this shows that he was in on it at the very beginning. But that doesn't follow at all. That's a question of fact. That's for the jury. His statement is that while he was inside, he decided that he might as well participate in getting some money. Not participate in the home invasion at the time. It is that which the hearsay statements relate to and causes the great amount of prejudice to Mr. Stewart in the trial. You just stand there and you smile at your co-defendants and when they get the money you say give me some. Not that he says oh I'm all in with you. Not that he says I'm going to help you all. But gee, they're going to get some money out of this one. Maybe I can later on. Not unusual for clients actually. The thinking of clients is not very logical sometimes or irrational. This causes this court to look at whether appellate counsel should have raised this on appeal, direct appeal. And I believe counsel should have. It was unreasonable for appellate counsel to not raise this on direct appeal. And then whether he was prejudiced. And that would be judged by whether there was a reasonable likelihood of this court reversing. And again, I believe that there was a very reasonable likelihood that this court would have reversed and remanded for a new trial. Consequently, we ask your honors for reversal and remand for a new trial. Thank you, Mr. Abbott. We should have the opportunity for a rebuttal. Mr. Sweeney. Good afternoon. Good afternoon. In our brief, we have conceded that there was a Crawford error. Tim Ting wrote the brief. However, we very definitely did not concede that Mr. Everett's colleagues in the 5th District OSEP were ineffective or incompetent for failing to raise this issue on direct appeal back in 2003. And that is the issue here. Everyone agrees that this issue could have been raised just as easily on direct appeal back 7 years ago as it could or 8 years ago as it could have been raised now. And I would respectfully suggest to you that in this case, defendant hasn't established either prong of a claim of ineffective assistance of appellate counsel. Neither the performance prong and particularly he hasn't established the prejudice prong. Now, I mean, the standard for whether an attorney on appeal is ineffective is whether is that an appellate lawyer doesn't have to raise every conceivable issue. And it's not an effectiveness or failure to raise an issue unless the judgment of the appellate lawyer is patently wrong. And for several reasons, the judgment of OSEP 5th District on direct appeal wasn't patently wrong. First of all, the hearsay was invited by the defense and offered for a non-hearsay purpose or at least a reasonable lawyer could conclude that it was. What happened was the defense counsel in cross-examining the investigating detective accused the investigating detective of lying to the grand jury on the grounds that he had no information that the co-defendant and McCurdy had made admissions about the case. So that's on cross-examination. And then on redirect examination, the prosecutor says, well, why did you say that to the grand jury? And the investigating detective says, well, Officer Golicki's report said that McCurdy said that the defendant planned this armed robbery or attempt armed robbery. In other words, the door was open. A reasonable attorney could conclude that the door was opened on cross-examination and that this hearsay evidence was offered for the non-hearsay purpose of rehabilitating the detective after the defense attorney had accused him of lying for the grand jury. Therefore, and also, of course, the relevant performance problems, whether a reasonable appellate lawyer could have concluded that the alleged hearsay evidence, which after all was a minor detail of the trial, was harmless. So while we conceded a Crawford violation occurred, it was not patently wrong to fail to raise this issue on direct appeal because a reasonable attorney, without being patently wrong, could conclude that the hearsay evidence was invited for the non-hearsay purpose of rehabilitating the detective. And a reasonable defense attorney on appeal could have concluded that the error was a minor detail of the trial and harmless. But we have an even stronger case on the prejudice problem of a claim of ineffective assistance of counsel. Because this trial was really a slow plea. The evidence of guilt was in fact overwhelming. Now, why do I say that? First of all, Robert Mikes, there was no possibility of a misidentification. He's the victim. He sees the defendant close up in his own home for a prolonged period. However, the testimony of Robert Mike was about as strongly corroborated as it possibly could be. It was corroborated by the fact that the defendant was arrested close to the scene of the crime. It was corroborated by the fact that the defendant's gun was recovered at the time the defendant was arrested. It was corroborated by the fact that the car in which the robbers went to the scene was the defendant's car. It was corroborated by the fact that the other victim, Patrick Thomas, made an excited utterance saying that the defendant had shot him. Now, Mr. Evers makes a big deal about the fact that there was an acquittal of aggravated battery for shooting Patrick Thomas. That was only because Patrick Thomas apparently was a drug dealer and didn't cooperate with the state and refused to testify at trial. In fact, I mean, that doesn't mean the defendant is innocent of anything else just because one victim doesn't want to testify against him. And finally, of course, the testimony of the victim, Robert Mike, is corroborated by defendant's written and signed statement. And Mr. Evers has said some things about that statement which were partially true, but he hasn't said everything about that statement. We filed an appendix including that written copy which this court can examine at its leisure. But the defendant says that even before he and his co-defendants went to the scene of the home invasion, they had been talking in the past and asking questions about how to do licks and I figured something might be up. So the defendant figured that a lick, which everyone agrees is a funny term for armed robbery, might be up even before he went in that house according to his own written statement. I mean, take a look at it yourself. Mr. Evers is right when he says that the specific admission that I guess I figured I was with this other dude doing a lick, I might as well go along for the ride and get something out of it, refers to what happened inside the house. But the defendant also admits that he had been thinking about joining in a lick even before he gets inside the house. So you have uncontradicted testimony of the victim, no possibility of misidentification, defendant arrested at the scene, gun recovered at the scene, defendant's car used to get to the scene, and the excited utterance of Patrick Thomas saying defendant shot him, and defendant's highly incriminated statement. Maybe any single item of those might not be overwhelming proof of guilt, but together they're overwhelming evidence of guilt. He was also convicted of aggravated battery with a firearm for shooting at a police officer. Officers Bertucci and Gibbs both gave eyewitness testimony saying that this defendant shot Officer Bertucci, who was in uniform at the time, and that testimony was uncontradicted. And furthermore, immediately after shooting at the police officer, defendant was pursued, and the officers never lost sight of him. They arrested him at the scene, they recovered his gun, and shells were recovered at the scene which matched that gun. Now, so not only was there overwhelming proof that this defendant shot at the officer, I mean they caught him right there, and they caught his gun, and they got his shells ejected from the gun, but if he wasn't going to the house to do an armed robbery or to do a lick, what was he doing carrying a gun anyway, and what was he doing shooting at a police officer? Again, I say this was less a trial than a slow plea. And so the question is, was there ineffective assistance of appellate counsel? A reasonable appellate lawyer could have concluded that the hearsay evidence was invited, offered for a non-hearsay purpose, that it wasn't an issue worth raising in view of the overwhelming proof of guilt, and as far as the prejudice prompt, there was in fact overwhelming proof of guilt, uncontradicted and conclusive evidence from many different sources. So for these reasons we ask that Mr. Evers' attack on the prior appellate lawyer in this case be rejected, and that the decision of the trial court be affirmed. Thank you, Mr. Sweeney. Do you have any rebuttal, Mr. Evers? Thank you, Your Honor. In terms of appellate court practice and how attorneys make decisions about raising issues, I would say that this was a decision that was dismissed and not a strategic decision, that there is no reasonableness in not raising this constitutional issue, that there was no invitation in the circuit court below about allowing this in. It wasn't rehabilitation. It was just something that was allowed in to prejudice Mr. Stewart's defense. And I realize that the state is in the business of prejudicing defendants' rights at trial, and that they're attempting to get a conviction, but there are certain rules of evidence that have to be followed. One of the clearest-cut rules of trials is that co-defendant statements are an admissible hearsay, that they're presumptively prejudicial, and they're not to be allowed into the trial. Defense counsel made the objection at trial, and that was simply overruled. Now, Robert Mike is a very key part of the state's case. They have to have Robert Mike testify, and his credibility is pretty shaky. The state does not want to have you really focus upon the not guilty verdict and just say that that was because Thomas did not testify and did not come in and help with the investigation, help the police and help the prosecutor reconvict Mr. Stewart. But also, there was testimony by Robert Mike that he was told by Thomas right after he was shot that Mr. Stewart shot him. That was not followed and believed. And the real point of all that is that Robert Mike is not necessarily the most believable witness and that this evidence that was presented improperly could have affected and did affect the jury's verdict and that it would be perfectly rational for the jury to find Mr. Stewart not guilty of the home invasion, not believe Robert Mike's version of what was occurring that night. I have to admit that the evidence that Mr. Stewart was present is overwhelming. Mere presence at the scene of an offense is not evidence of guilt. It does not prove guilty under reason about that. I don't want to try and justify his running away and firing his gun at the police. That is something that we're not arguing about in this trial. That conviction, I'm not going to ask this court to reverse and remand for a new trial. There were several police officers who testified to that. However, their testimony about that does not focus upon and does not present overwhelming evidence of guilt of the home invasion, which you have to judge by what he was doing at the time when he entered. And the accountability of his agreeing to do these things at the time. His statement that he was going to an after set party after 3 o'clock in the morning when he's being out drinking, the alcohol explains a lot about why he flees and fibers. Rational decisions do not get made necessarily in that kind of situation. It is something that the jury could consider in its determination on the circumstantial evidence of the intent that he had. But it is not direct evidence and it's not overwhelming evidence. The only overwhelming evidence that there is is that he was present. Again, we would say that mere presence at the scene of the crime, the home invasion, caused the jury to pay attention to this improperly admitted evidence. Convicting of that based upon that and that a remand for a new trial is appropriate. Thank you, Your Honors. Thank you, Mr. Edwards. Thank you, Mr. Sweeney. Thank you, Your Honor.